Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| AGNES Y. MELÉNDEZ RIVERA<br><br>*Recurrida*<br><br>v.<br><br>CR DESIGN STUDIO, LLC<br><br>*Recurrente* | TA2025RA00031 | Revisión Administrativa procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.:<br>SAN-2023-0013303<br><br>Sobre:<br>Construcción |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de agosto de 2025.

Comparece ante nos, CR Design Studio LLC (CR Desing o recurrente), mediante recurso de *Revisión Administrativa* y solicita la revocación de la *Resolución*[1] emitida y notificada el 23 de abril de 2025, por el Departamento de Asuntos del Consumidor (DACo o agencia recurrida). En el referido dictamen, DACo declaró *Ha Lugar* la *Querella Enmendada*[2] presentada por la señora Agnes Y. Meléndez Rivera (señora Meléndez Rivera o recurrida), y ordenó a la recurrente a pagar la suma de dieciséis mil doscientos sesenta y nueve dólares con dos centavos ($16,269.02).

Por los fundamentos que expondremos a continuación, **confirmamos** la *Resolución* recurrida.

**I.**

Según surge del expediente, el 19 de enero de 2023, la señora Agnes Y. Meléndez Rivera (señora Meléndez Rivera o recurrida) presentó la *Querella Núm.: SAN-2023-0013303*[3] por vicios y defectos de construcción de su apartamento, localizado en Guaynabo, Puerto

---

[1] Apéndice 1 del recurso de *Revisión Administrativa*.
[2] Apéndice 5 del recurso de *Revisión Administrativa*.
[3] Véase Tomo 1 del Expediente Administrativo.

Rico. La misma fue presentada y notificada por DAco el 10 de febrero de 2023. Como parte de los procedimientos, el 22 de mayo de 2023, la agencia recurrida llevó a cabo una inspección en la residencia de la señora Meléndez Rivera[4]. Así pues, el 31 de mayo de 2023, DACo notificó el informe de inspección realizado por el señor Edgardo Amador Acevedo (inspector Amador). Del mismo surgió lo siguiente[5]:

**RESULTADOS DE LA INSPECCIÓN**

**Hallazgos de la construcción según alegaciones de la querella:**

Se encontró apto.con trabajos de remodelación completado, puertas (7) ya excitante Intervenida y removidas para pintar, resultando con imperfecciones en la instalación, gozne, medidas de puerta con un acabado deficiente que no cumple con la tonalidad de color, inconclusa sin las terminaciones adecuadas, afectando la visibilidad estética, de un trabajo que no cumple con las expectativas de la querellante

Baño con desniveles por un revestimiento en el piso de la ducha que resulto sin los declives apropiados hacia los drenajes ya existentes, quedando con aguas acumuladas en el área alrededor interior del baño.

Gabinetes de baño completados con diseño y medidas que no se adaptan a las dimensiones de espacio, particular profundidad en gaveta que no cumplen con las expectativas de la querellante.

Lavamanos baños resulto con drenaje incomodo, agua baja con dificultad.

Los enchapes de baño paredes y piso en la decoración, lucen descuadrada, comprometido con irregularidades y deficiencias en instalación, terminaciones y un acabado, que no cumple con las expectativas de la querellante, afectando la visibilidad estética del interior

**OPINIÓN PERICIAL**

Muchas deficiencias deben de ser corregidas por servicio en garantía.

Desde remoción puertas, losas piso, enchapado de los baños y muebles, para que quede bien es que se remueva todo lo que tiene y comenzar desde el principio nuevamente para poder garantizar el trabajo.

Sin embargo, se provee un estimado de reparación, en caso a que los querellados no reparen dicha deficiencia.

Así como cualquier reclamación presente en la misma, y se hacen formar parte integrar de esta querella.

Estimados, facturas pagos recibos a presentar de ser requerido

---

[4] *Íd.*
[5] *Íd., Informe de Inspección Construcción.*

| ESTIMADO SUJETO A CAMBIO | | | |
|---|---|---|---|
| **Descripción** | | | **Costo** |
| Por concepto de obra completada con irregularidades y deficiencias, así como la reparación de la misma Materiales y mano de obra desde… | | | $ 7,500.00 |
| | | | |
| | | | |
| Impuesto sobre la venta y uso | 7% | | $ 525.00 |
| Obrero diestro | X | | |
| | | | |
| | | Subtotal | $ 8,025.00 |
| | | Imprevistos 10% | $ 802.50 |
| | | Seguros 7% | $ 561.75 |
| | | **Total** | $ 9,389.25 |

| OBSERVACIONES |
|---|
| Querellante ha dado amplia oportunidad al querellado de reparar y corregir dichas deficiencias mediante múltiples comunicaciones verbales y escritas, Sin embargo, al día de inspección con todas las partes presente no se llegó algún acuerdo de transacción esperando a ser referida vista adm. |

Tras varios trámites procesales, el 20 de julio de 2023, la recurrida presentó la *Querella Enmendada*. En respuesta, el 21 de agosto de 2023, CR Desing presentó *Contestación a Enmienda a la Querella*[6]. Así las cosas, el 16 de enero de 2024, se señaló una Vista Administrativa para el 7 de marzo de 2024[7]. A la vista asistieron las partes de epígrafe y el señor Dennis J. López Roldán (testigo López), pareja por relación de afectividad análoga a la conyugal y testigo de la parte recurrida.

Luego de múltiples incidentes procesales, el 22 de mayo de 2024, se señaló vista administrativa de seguimiento para los días 26 y 27 de agosto de 2024. A las mismas, comparecieron las partes, el testigo López, el perito de la recurrente, el señor Harold Eli Ramos (perito Ramos) y el perito de la señora Meléndez Rivera y el señor

---

[6] Apéndice 4 del recurso de *Revisión Administrativa*.
[7] Véase Tomo 1 del Expediente Administrativo.

Carlos Javier Montenegro (perito Montenegro). Durante la vista, las partes estipularon de forma conjunta los siguientes Exhibits:

Exhibit I: Project Contract [contratación inicial] con fecha del 27 de julio de 2021. Exhibit II: Residential Remodelations, con fecha del 16 de diciembre de 2021.

Exhibit III: Documento de remodelaciones por hacerse.

Exhibit IV: Addendum.

Exhibit V: Cheque núm. 103132100036192, con fecha del 29 de noviembre de 2021, por la cantidad de $42,799.82, emitido por Dennis J. López Roldán, a favor de CR Design Studio Inc.

Exhibit VI: Cheque núm. 1128, con fecha del 11 de abril de 2022, por la cantidad de $21,513.22, emitido por Agnes Y. Meléndez Rivera, a favor de CR Design Studio Inc.

Exhibit VII: Cheque núm. 030, con fecha del 8 de diciembre de 2022, por la cantidad de $6,808.32, emitido por CR Design Studio Inc., a favor de Agnes Y. Meléndez Rivera.

Exhibit VIII: Tabla con desglose de trabajos y precios por trabajos.

Exhibit IX: Recibo de CLB, con fecha del 13 de enero de 2022, por la cantidad de $1,065.66.

Exhibit X: Catálogo con desglose de trabajos a realizarse en la residencia de la querellante.

Exhibit XI: Certificación de la Junta Examinadora de Decoradores y Diseñadores de Interiores de Puerto Rico, de Cristina M. Zabala Soler.

Exhibit XII: Informe Pericial y Curriculum Vitae de Harold Eli Ramos.

Exhibit XIII: Ley Núm. 125 del 1973 y Ley Núm. 131 del 1976[8].

Además, se admitió en evidencia la siguiente prueba de la parte recurrida:

Exhibit I, Parte Querellante: Estimado de RS Property Group, LLC, por la cantidad de $12,098.43 [remodelación del baño]

Exhibit II, Parte Querellante: Estimado de Ferreterías Maderas 3C, por la cantidad de $1,589.66 [trabajo de puertas].

Exhibit III, Parte Querellante: Informe de Inspección y Curriculum Vitae de Carlos Javier Montenegro Matos[9].

En cuanto a la evidencia admitida de CR Desing:

Exhibit I, Parte Querellada: Presentación del Proyecto de CR Design Studio, con fecha de octubre de 2021.

---

[8] Apéndice 4 del recurso de *Revisión Administrativa*, pág. 2.
[9] *Íd.*, pág. 3.

Exhibit II, Parte Querellada: Presupuesto entregado por la parte querellada, a la parte querellante, firmado por la querellante el 30 de noviembre de 2021.

Exhibit III, Parte Querellada: Certificación de la Junta Examinadora de Decoradores y Diseñadores de Interiores de Puerto Rico, de Laura Angélica Maldonado Rodríguez.

Exhibit IV, Parte Querellada: Certificado de Registro de Comerciante y Certificado de corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, debidamente inscrita en el Departamento de Estado.

Exhibit V, Parte Querellada: Correo electrónico, querellante le envió planos de su residencia a la parte querellante.

Exhibit VI, Parte Querellada: Planos de la residencia de la querellante.

Exhibit VII, Parte Querellada: Listado de cambios solicitados por la parte querellante [objetado por la representación legal de la parte querellante].

Exhibit VIII, Parte Querellada: Screenshot de conversación con la querellante, a través de WhatsApp.

Exhibit IX, Parte Querellada: Screenshot de conversación con la querellante, a través de WhatsApp.

Exhibit X, Parte Querellada: Screenshot de conversación con la querellante, a través de WhatsApp.

Exhibit XI, Parte Querellada: Screenshot de conversación con la querellante, a través de WhatsApp[10].

Desfilada la prueba testifical y documental de las partes, la agencia recurrida procedió a formular las siguientes determinaciones de hechos:

1. La parte querellante se identifica como Agnes Y. Meléndez Rivera, mayor de edad, con dirección postal: PMB 124 PO BOX 7891, Guaynabo, PR 00970, y correo electrónico: ayoveira72@gmail.com.

2. CR Design Studio, LLC, es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, debidamente inscrita en el Departamento de Estado, bajo el número de registro: 353063, con dirección postal: PO BOX 586, Vega Baja, PR, 00694.

3. La parte querellante deseaba remodelar su residencia, localizado en Guaynabo, PR. La parte querellante es la dueña registral de la propiedad, sin embargo, viven en la propiedad, la querellante, su pareja por relación de afectividad análoga a la conyugal, durante 20 años, Dennis J. López Roldán y la hija de ambos.

4. La querellante contactó a la parte querellada. La parte querellada acudió a la residencia de la parte querellante, por primera vez, el 12 de julio de 2021, para una evaluación de la remodelación y decoración de la residencia de la querellante.

---

[10] *Íd.*, pág. 4.

5. La parte querellada evaluó la propiedad, para remodelación y decoración. Las partes acordaron que la parte querellada le haría una presentación del proyecto y luego, la querellante decidía si contrataba a la parte querellada para la remodelación y decoración de su propiedad. El 27 de julio de 2021, las partes firmaron el Project Contract, para la presentación del proyecto. La parte querellante pagó a la parte querellada la cantidad de $2,650.00.

6. En octubre de 2021, la parte querellada hizo la presentación del proyecto, en donde le presentó a la querellante cómo sería la obra de remodelación y decoración de su residencia. En esta ocasión, la querellante solicitó unos cambios.

7. En noviembre de 2021, las partes [querellante y querellada] firmaron un contrato para la remodelación y decoración de la propiedad de la querellante.

8. Según el cheque núm. 103132100036192, con fecha del 29 de noviembre de 2021, la pareja por relación de afectividad análoga a la conyugal, de la querellante, Dennis J. López Roldán, pagó la cantidad de $42,799.82, en concepto de depósito, a la parte querellada.

9. La parte querellante no contrató a ningún contratista, ebanista, trabajador. Todos los trabajadores que realizaron obras en la residencia de la parte querellante fueron contratados por la parte querellada. La parte querellante tampoco pagó cantidad alguna a los trabajadores. Los contratistas, ebanistas, trabajadores, recibieron su remuneración económica a través de la parte querellada.

10. Indica el Residential Remodelations, con fecha del 16 de diciembre de 2021, en lo aquí pertinente, que: CR Design Studio, Inc es responsable de estos trabajos a realizar [haciendo referencia a un listado de trabajos que se realizarían en la residencia de la parte querellante] y los trabajos serán supervisados por nuestro equipo de profesionales. Tardaremos menos de 3 meses en completar estas tareas.

11. La parte querellada debía realizar en la residencia de la querellante, la siguiente obra/remodelación: remodelación del baño de visitas [remoción de losas y bañera, instalación de ducha, instalación de losas, remoción de lavamanos e instalación de nuevo mueble de baño, accesorios, plomería del baño]; remoción de cocina e instalación de nuevos gabinetes y backlash; remodelación de un cuarto; decoración en general [pintar residencia, decoración, empapelado]; pintar 4 puertas de la casa, e instalación de mobiliaria en general.

12. Los trabajos de construcción/remodelación en la propiedad de la querellante comenzaron en febrero de 2022.

13. La parte querellante pagó la cantidad adicional de $21,513.22, para el mes de abril de 2022, a la parte querellada.

14. La parte querellante y su pareja por relación de afectividad análoga a la conyugal, Dennis J. López Roldán, le pagaron a la parte querellada la cantidad total de $64,313.04. De esta cantidad se excluye la cantidad de $2,650.00.

15. Durante la ejecución de la obra, la parte querellante se percató que algunos trabajos no se estaban realizando de manera adecuada, todas sus inquietudes se las notificó a la parte querellada.

16. A finales de agosto de 2022, la parte querellada acudió a la residencia de la parte querellante para evaluar los trabajos realizados por sus trabajadores. En adición, la parte querellada cambio al trabajador-contratista, en dos ocasiones.

17. Luego de que la parte querellante le notificara a la parte querellada los defectos que encontró en la obra realizada en su residencia, la parte querellada no realizó trabajos de reparación.

18. El 8 de diciembre de 2022, la parte querellada le entregó a la querellante un cheque por la cantidad de $6,808.32, en concepto de pago final remanente.

19. La parte querellante presentó la querellada de epígrafe, solicitando que la parte querellada la remunere económicamente, para reparar la obra defectuosa, realizada en su residencia.

20. Laura Maldonado Rodríguez [agente residente y presidenta de CR Design Studio, LLC] y Cristina Zabala [vicepresidenta de CR Design Studio, LLC].

21. A este Departamento no le mereció credibilidad el testimonio de Laura Maldonado Rodríguez, en cuanto a que ella estaba para asistir a los trabajadores que contrató la parte querellante. Es un hecho, que los contratistas, ebanistas y trabajadores, fueron contratados por la parte querellada.

22. En el Catálogo con desglose de trabajos a realizarse en la residencia de la querellante, con fecha de octubre de 2021, estaban desglosados quienes harían ciertos trabajos, como: Luis Alberto Vazquez [ebanista], Miguel Trillo [contratista], Anthony Valentín [instalador de wallpapaer], handyman, Ángel García [contratista]. Laura Maldonado Rodríguez lo aceptó en su testimonio, se hizo la cotización con ellos desde el principio.

23. A este Departamento no le mereció credibilidad el testimonio de Cristina M. Zabala Soler, en cuanto a que la querellante tenía malas actitudes con los trabajadores de la obra.

24. Según el testimonio de Carlos Javier Montenegro Matos, perito de la parte querellante, testimonio que le mereció credibilidad a este Departamento, la obra realizada por los contratistas, ebanistas, trabajadores, contratados por la parte querellada, fue una defectuosa y debe ser reparada. El perito, Carlos Javier Montenegro Matos, realizó una Inspección, para febrero de 2023, en la residencia de la parte querellante. Sus hallazgos fueron los siguientes:

a. Baño de Visitas: mal instalación de losas, mal instalación de la ducha, empozamiento en el piso de la ducha, placa del piso de la ducha mal instalado, daños en las losas instaladas, mal aplicación de lechada en las losas, lavamanos [mueble] mal instalado, plomería del lavamanos mal instalada, puerta corrediza de la ducha mal instalada y barra manchada, puerta mal instalada.

b. Baño del Master Room: lavamanos [mueble] mal instalado, plomería del lavamanos mal instalada, las gavetas del mueble del lavamanos son muy hondas, lo que puede provocar que el mueble se doble o se deforme.

c. Puerta del Master Room: puerta mal instalada.

d. Laundry: puerta con trabajo de pintura incompleto, "goznes" mal instalados.

e. Pasillo del baño de visitas: puerta no abre/cierra adecuadamente, puerta con trabajo de pintura incompleto.

25. Según los hallazgos del Informe del Inspector del Departamento, inspección realizada el 22 de mayo de 2023, "[s]e encontró apartamento con trabajos de remodelación completado, puertas (7) ya [existentes] intervenida y removidas para pintar, resultando con imperfecciones en la instalación, gozne, medidas de puerta con un acabado deficiente que no cumple con la tonalidad de color, inconclusa sin las terminaciones adecuadas, afectando la visibilidad estética, de un trabajo que no cumple con las expectativas de la querellante, baño con desniveles por un revestimiento en el piso de la ducha que resulto sin los declives apropiados hacia los drenajes ya existentes, quedando con aguas acumuladas en el área alrededor interior del baño. Gabinetes de baño completados con diseño y medidas que no se adaptan a las dimensiones de espacio, particular profundidad en gaveta que no cumplen con las expectativas de la querellante. Lavamanos baños resulto con drenaje incomodo, agua baja con dificultad. Los enchapes de baño paredes y piso en la decoración, lucen descuadrada, comprometido con irregularidades y deficiencias en instalación, terminaciones y un acabado, que no cumple con las expectativas de la querellante, afectando la visibilidad estética del interior". Indica el Inspector que: "[m]uchas deficiencias deben de ser corregidas por servicio en garantía. Desde remoción puertas, losas piso, enchapado de los baños y muebles, para que quede bien es que se remueva todo lo que tiene y comenzar desde el principio nuevamente para poder garantizar el trabajo". Con un estimado para reparaciones por la cantidad de $9,389.25[11].

Así pues, DACo declaró *Ha Lugar* la *Querella Enmendada* y

ordenó que:

(...)

Dentro del improrrogable término de veinte (20) días contados a partir del archivo en autos de copia de la presente Resolución, la parte querellada, CR DESIGN STUDIO, LLC, deberá pagarle a la parte querellante la cantidad de $16,269.02, y la suma de $2,000.00, en concepto de honorarios de abogado. A dicha suma de dinero le será aplicada el interés legal correspondiente desde que se ordenó el pago hasta que la misma sea satisfecha, a tenor con la Regla 27.2 del Reglamento de Procedimientos Adjudicativos, Reglamento Núm. 8034 de 14 de junio de 2011.

---

[11] *Íd.*, págs. 4-7.

Inconforme con la determinación, el 13 de mayo de 2025, CR Desing presentó *Moción de Reconsideración*[12]. En apretada síntesis, adujo que DACo no tenía jurisdicción sobre ellos, debido a que eran diseñadores de interiores y no contratistas. En la alternativa, arguyó que:

> [e]n el escenario que se determinara responsabilidad de la parte querellada, lo cual negamos, se tenía que determinar cual de los informes se iba a adoptar, si el de inspección de DACO o el del perito de la querellante y a ese número restarle los $6,808.32 pagados por la parte querellada. Por tanto, la Juez administrativo si no adopta nuestros planteamientos jurisdiccionales tiene como cuestión de derecho ajustar la cuantía de daños de conformidad con la evidencia presentada en el expediente administrativo, que incluye también descontar los pagos realizados por la pareja de la querellante, ya que ella no tiene derecho a ellos[13].

La agencia recurrida no atendió la reconsideración, por ende, el 27 de junio de 2025, CR Desing presentó el recurso ante nuestra consideración y le imputó al DACo los siguientes señalamientos de error:

> ERRÓ LA HONORABLE JUEZ ADMINISTRATIVA, DE DACO EN EL CÁLCULO DE LOS DAÑOS
>
> ERRÓ LA HONORABLE JUEZ ADMINISTRATIVA DE DACO AL NO ATENDER EL PLANTEAMIENTO JURISDICCIONAL QUE LA AGENCIA NO TIENE JURISDICCIÓN PARA ATENDER UNA RECLAMACIÓN EN CONTRA DE UN DISEÑADOR DE INTERIORES

El 9 de julio de 2025, emitimos una *Resolución* concediéndole término a la parte recurrida hasta el 29 de julio de 2025 para que presentara su alegato en oposición. Además, ese mismo día, ordenamos al DACo, Oficina Regional de San Juan, a remitir a este foro intermedio el expediente administrativo número SAN-2023-0013303 junto con toda la prueba admitida en evidencia. En cumplimiento con lo anterior, la señora Meléndez Rivera compareció mediante escrito intitulado *Alegato de la Recurrida en Oposición a Recurso de Revisión* y, el 4 de agosto del corriente, el DACo cumplió con lo ordenado por esta Curia.

---

[12] Apéndice 3 del recurso de *Revisión Admtrativa.*
[13] *Íd.*, pág 5.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico establece la autoridad del Tribunal de Apelaciones para revisar "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas"[14]. Por su parte, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU) establece el marco de revisión judicial de estas decisiones[15]. Cónsono con lo anterior, nuestra función revisora se limita a delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los poderes delegados y sean consecuentes con la política pública que las origina[16].

Debido a la vasta experiencia y conocimiento especializado que tienen las agencias administrativas sobre los asuntos que le son encomendados, los foros revisores les conceden gran consideración y deferencia a sus decisiones[17]. Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley[18]. Es por esta razón, que la revisión judicial se limita a determinar si la agencia actuó de manera arbitraria o ilegal, o de forma tan

---

[14] Art. 4006(c) de la Ley Núm. 201-2003, 4 LPRA sec. 24(y)(c).

[15] Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.

[16] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016); *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999).

[17] *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026 (2020); *PRHOA v. Confederación Hípica*, 202 DPR 509, 521 (2019).

[18] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales*, 2025 TSPR 56, 215 DPR ___ (2025).

irrazonable que sea considerado un abuso de discreción[19]. Hay que señalar que las determinaciones de los organismos administrativos están cobijadas por una presunción de corrección y legalidad que debe respetarse, mientras la parte que las impugne no demuestre con suficiente evidencia que la decisión no está justificada[20].

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal[21]. El criterio rector es la razonabilidad de la actuación de la agencia recurrida[22]. Por ello, al momento de evaluar una determinación administrativa se debe considerar si: (1) el remedio concedido por la agencia fue apropiado; (2) la decisión de la agencia está sostenida en evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) las conclusiones de derecho fueron correctas[23].

Ahora bien, si la decisión del organismo administrativo no estuvo basada en evidencia sustancial; erró en la aplicación o interpretación de las leyes o los reglamentos que se le encomendó administrar; o actuó de manera irrazonable, arbitraria o ilegal, al realizar determinaciones carentes de una base racional; o si la actuación lesionó derechos constitucionales fundamentales, la deferencia debida a la agencia debe ceder[24].

Si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de

---

[19] *Pérez López v. Depto. de Corrección*, 208 DPR 656, 673 (2022); *Super Asphalt v. AFI y otro, supra*, pág. 821; *Trigo Margarida v. Junta Directores*, 187 DPR 384, 394 (2012).

[20] *Trigo Margarida v. Junta Directores, supra*, págs. 393-394; *Mundo Ríos v. CEE et al.*, 187 DPR 200, 219 (2012), citando a *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

[21] *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006).

[22] *Super Asphalt v. AFI y otro, supra*; *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013); *Trigo Margarida v. Junta Directores, supra*, pág. 394.

[23] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35-36 (2018); *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012).

[24] *OEG v. Martínez Giraud, supra*, pág. 90; *Super Asphalt v. AFI y otro, supra*, pág. 819, citando a *Torres Rivera v. Policía de PR, supra*, pág. 628; *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

derrotar con suficiente evidencia, que la determinación no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración[25]. De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad[26].

Sobre las determinaciones de derecho, el Tribunal Supremo ha dicho que distinto a las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno[27]. Sin embargo, esto no quiere decir que un foro apelativo pueda descartar las conclusiones y sustituir el criterio del ente administrativo por el suyo. En estos casos, también los tribunales apelativos les deben deferencia a los organismos administrativos[28].

**-B-**

El Departamento de Asuntos del Consumidor (DACo) fue creado mediante la Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como la "Ley Orgánica del Departamento de Asuntos del Consumidor"[29]. Este fue creado con el propósito primordial de velar y establecer los derechos del consumidor y proteger los intereses de los compradores[30]. Asimismo, entre los poderes conferidos al Secretario de esa agencia están el atender, investigar y resolver las querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía[31]. De igual forma, se faculta al Secretario a poner en vigor

---

[25] *González Segarra et al. v. CFSE, supra,* pág. 277; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216-217 (2012); *Pereira Suárez v. Jta. Dir Cond.*, 182 DPR 485, 511 (2011).

[26] *González Segarra et al. v. CFSE, supra*; *Pereira Suárez v. Jta. Dir Cond., supra*, pág. 513, citando a *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 398 (1999); *O.E.G. v. Rodríguez*, 159 DPR 98, 118 (2003).

[27] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales, supra.*

[28] *González Segarra et al. v. CFSE, supra*, págs. 277-278; *Batista, Nobbe v. Jta. Directores, supra*, pág. 217, citando a *Rebollo v. Yiyi Motors, supra.*

[29] 3 LPRA sec. 341, *et seq.*

[30] 3 LPRA secs. 341(b).

[31] 3 LPRA sec. 341e(c).

e implementar los derechos de los consumidores, tal y como están contenidos en todas las leyes vigentes, mediante una estructura de adjudicaciones. Esta disposición nos permite aplicar los principios y disposiciones del Código Civil y otras leyes que gobiernen de forma concreta los hechos de cada caso.

Con la intención de asegurar la solución justa, rápida y económica de las querellas presentadas ante o por el Departamento y proveer un procedimiento uniforme para su adjudicación, el 13 de junio de 2011 se aprobó el Reglamento Núm. 8034 de Procedimientos Adjudicativos del DACO[32]. Estas reglas aplicarán a las investigaciones y los procedimientos administrativos sobre querellas iniciadas por consumidores, o por el Departamento[33]. Cónsono con lo anterior, la Regla 27.1 del Reglamento Núm. 8034, *supra*, dispone que, "[t]oda resolución otorgará el remedio que en derecho proceda aun cuando la parte querellante no lo haya solicitado".

**-C-**

La Ley Núm. 55 de 1 de junio de 2020[34], según enmendada, conocida como el "Código Civil de Puerto Rico de 2020" (Código Civil del 2020) define el contrato como: "[e]l negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones"[35]. Así pues, nuestro ordenamiento dispone que "[el] contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa (...)"[36]. Una vez perfeccionado el contrato, el mismo tiene fuerza de ley entre las

---

[32] Regla 1 del Reglamento Núm. 8034.
[33] Regla 3 del Reglamento Núm. 8034.
[34] 31 LPRA sec. 5311 *et seq.*
[35] Art. 1230, 31 LPRA sec. 9751.
[36] Art. 1237, 31 LPRA sec. 9771.

partes, ante sus sucesores y ante terceros en la forma que dispone la ley[37].

Es menester enfatizar que: "[e]s facultativo contratar o no hacerlo, y hacerlo, o no, con determinada persona. Estos derechos no pueden ejercerse abusivamente ni contra una disposición legal. Las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público"[38].

Por su parte, el contrato de obra o contrato de arrendamiento es cuando: "[e]l contratista se obliga, sin estar subordinado al comitente, a realizar una obra material o intelectual por el pago de un precio"[39]. En cuanto a las obligaciones del comitente, el mismo está obligado a: "(a) pagar el precio de la obra; (b) proporcionar la colaboración necesaria para que la obra pueda realizarse; y (c) recibir la obra, cuando esta ha sido ejecutada conforme a lo convenido (...)"[40]. Referente a las obligaciones del contratista, estas incluyen:

(a) ejecutar la obra según lo convenido y los conocimientos que exige el arte, la ciencia o la técnica correspondiente para la ejecución;

(b) no variar la obra convenida, salvo cuando las modificaciones son necesarias para ejecutarla conforme a las reglas del arte, la ciencia o la técnica que corresponda, siempre que las modificaciones sean imprevisibles en el momento de la contratación;

(c) proveer al comitente la información esencial sobre la ejecución;

(d) comunicar al comitente cualquier variación necesaria y el costo estimado de esta;

(e) advertir al comitente sobre la mala calidad o inadecuación de los materiales que ha provisto;

(f) aportar, excepto cuando se haya pactado de otro modo, los materiales que se utilizan corrientemente en la ejecución;

(g) ejecutar la obra dentro del tiempo convenido o en el que razonablemente corresponda;

(h) permitir que el comitente, siempre que no perjudique el desarrollo de los trabajos, verifique a su costa el estado de

---

[37] Art. 1233, 31 LPRA sec. 9754.
[38] Art. 1232, 31 LPRA sec. 9753.
[39] Art. 1367, 31 LPRA sec. 10251.
[40] Art. 1374, 31 LPRA sec. 10271.

avance, así como la calidad de los materiales utilizados y los trabajos efectuados;

(i) garantizar la solidez de la obra contra la ruina por el término de diez (10) años desde la entrega, cuando esta se ha construido en un inmueble y deba tener larga duración. Igual responsabilidad tendrá el promotor de la obra. El arquitecto responde si la ruina se debe a vicios del suelo o la dirección; y

(j) garantizar que la obra sirve para el destino previsto[41].

Ahora bien, según el Artículo 1255 del Código Civil del 2020, *supra*, en los contratos con prestaciones recíprocas se encuentra implícita la facultad de resolver extrajudicialmente el contrato por falta de cumplimiento de una obligación principal, conforme a las siguientes reglas:

(a) la parte incumplidora debe estar en mora; (b) debe requerirse a la parte incumplidora, bajo apercibimiento de resolver el contrato total o parcialmente, que cumpla su obligación, incluyendo el daño moratorio; (c) las prestaciones parcialmente cumplidas no se resuelven y quedan firmes; (d) la resolución opera al momento de vencer el requerimiento; (e) la resolución produce el efecto previsto en este Código para la condición resolutoria cumplida; y (f) puede reclamarse el cumplimiento y el resarcimiento de daños[42].

**-D-**

La Ley Núm. 146 de 10 de agosto de 1995[43], según enmendada, conocida como "Ley de Registro de Contratistas" (Ley Núm. 146-1995) define contratista como:

[u]na persona natural o jurídica que somete una propuesta u oferta de construcción, administra, dirige o en cualquier otra forma directa o indirecta, asume la dirección de una obra de construcción, según definida en esta Ley, o que se anuncia como tal. Este término incluye también a los subcontratistas o cualquier contratista especializado y a toda persona que se dedique a la industria de la construcción[44].

De otro lado, la precitada ley define construcción como "una alteración, demolición, restauración, reparación, erección, instalación de equipo y materiales y mejoras, de cualquier tipo de obra de construcción. Incluye, sin limitarse a ello, instalaciones y

---

[41] Art. 1375, 31 LPRA sec. 10272.
[42] Art. 1255, 31 LPRA sec. 9823.
[43] 23 LPRA sec. 1020a *et seq.*
[44] Art. 1 (a), 23 LPRA sec. 1020a-1.

reparaciones de servicios esenciales y al tratamiento de techos para corregir filtraciones"[45].

Además, la Ley Núm. 146-1995, *supra*, dispone que una obra de construcción incluye viviendas, mejoras a solares, mejoras paisajistas, entre otras, ya sea en su totalidad o en una parte de éstas[46].

**-E-**

La Sección 3.21 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico[47], establece que las agencias, dentro de su función cuasi judicial, poseen la facultad para imponer sanciones. Entre ellas, la imposición de costas y honorarios de abogado, en los mismos casos que disponen las Reglas de Procedimiento Civil[48]. Específicamente, la Regla 44.1 (d) de las de Procedimiento Civil[49], rige lo concerniente a la imposición de honorarios de abogado. Pertinente al caso que nos ocupa, la precitada dispone lo siguiente:

> (d) Honorarios de abogado – En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso de que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

Según se desprende de la precitada disposición legal, la imposición o concesión de honorarios de abogado no procede en todos los casos. En nuestro ordenamiento, la concesión de honorarios de abogado depende de que el juzgador determine que una parte o su abogado actuó con temeridad o frivolidad[50]. A modo

---

[45] *Íd.*
[46] *Íd.*
[47] 3 LPRA sec. 9661.
[48] *Íd.*
[49] 32 LPRA Ap. V, R. 44.1 (d).
[50] *PR Fast Ferries et al. v. AAPP*, 213 DPR 103 (2023).

de excepción, esta norma cede cuando una ley especial lo establezca expresamente[51]. En otras palabras, una determinación previa de temeridad no es necesaria cuando el estatuto especial requiere que el juzgador imponga una suma razonable por honorarios de abogado[52].

Se entiende que una de las partes o su representante legal actúa temerariamente al dilatar los procesos ya instados, crear gestiones evitables, o interponer pleitos frívolos que obliguen a la otra parte a incurrir en gastos innecesarios[53]. Su propósito es penalizar al "[l]itigante perdidoso que, por su obstinación, terquedad, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, los gastos, el trabajo y los inconvenientes de un pleito"[54].

La determinación de temeridad o frivolidad descansa en la discreción del tribunal[55]. Por ende, los tribunales apelativos solo intervendrán con dicha determinación cuando surja un abuso de discreción. *Íd.* Ahora bien, determinada la existencia de temeridad, la imposición de honorarios de abogado es mandatoria[56].

No obstante, no procede la imposición del pago de honorarios de abogado en las siguientes circunstancias: (1) cuando se plantean asuntos complejos y novedosos; (2) cuando se actúa acorde con una apreciación errónea del derecho y no existen precedentes vinculantes sobre el asunto, o (3) cuando exista una discrepancia genuina en cuanto al derecho aplicable a los hechos del caso[57]. En estas situaciones, la temeridad es inexistente[58].

---

[51] *Íd.*
[52] *Ortiz Valle v. Panadería Ricomini*, 210 DPR 831, 838-839 (2022).
[53] *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163, 193 (2022).
[54] *Íd., citando a P.R. Oil v. Dayco*, 164 DPR 486, 511-512 (2005).
[55] *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 150 (2022).
[56] *Pérez Rodríguez v. López Rodríguez et al., supra*, a las págs. 192-193.
[57] *SLG González-Figueroa v. SLG et al., supra*, a la pág. 149.
[58] *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 277 (2021).

**III.**

En el recurso de epígrafe, la recurrente adujo que erró el DACo en el cálculo de los daños y al no atender el planteamiento jurisdiccional relacionado a que la agencia no tenía jurisdicción para atender una reclamación en contra de un diseñador de interiores. Discutiremos el segundo señalamiento de error, por entender que, luego de ello, podemos disponer del asunto del cálculo de los daños.

Como adelantamos en la exposición del derecho, el Artículo 1 (a) de la Ley Núm. 146-1995, *supra*, define contratista como:

> **[u]na persona** natural o **jurídica que somete una propuesta u oferta de construcción, administra, dirige o en cualquier otra forma directa o indirecta, asume la dirección de una obra de construcción**, según definida en esta Ley, o que se anuncia como tal. **Este término incluye también a los subcontratistas o cualquier contratista especializado** y a toda persona que se dedique a la industria de la construcción. (Énfasis Nuestro).

Surge del expediente ante nuestra consideración que, el 16 de diciembre de 2021, **la recurrida contrató de manera exclusiva con CR Desing**[59]. **El contrato intitulado *Residential Remodelations***[60] **indicó que, la recurrente era responsable de los trabajos a realizar en el apartamento de la señora Meléndez y que los mismos serían supervisados por su equipo de profesionales**. Igualmente, **se desprende de la prueba admita en evidencia que CR Desing buscó auxiliares para la ejecución del contrato**[61]. Es por lo anterior que, no le asiste la razón a la recurrente, en cuanto a que eran diseñadores de interiores, no contratistas, y que, por ende, no respondían por los defectos de los trabajos realizados en el apartamento de la señora Meléndez Rivera.

Evaluado el expediente ante nuestra consideración, concluimos que la recurrente incumplió con su obligación contractual. Esto, debido a que, CR Desing y todo el personal

---

[59] Véase, Exhibit II, Tomo 1 del Expediente Administrativo.
[60] *Íd.*
[61] Véase, Exhibit III, Tomo 1 del Expediente Administrativo.

contratado por ésta realizaron una obra deficiente e inconclusa, por lo cual el segundo error no fue cometido.

Ahora bien, respecto al primer error, la recurrente cuestiona el cómputo de la compensación que concede el DACo en la *Resolución* recurrida, a saber, la concesión a la señora Meléndez Rivera la cantidad de dieciséis mil doscientos sesenta y nueve dólares con dos centavos ($16, 269.02) por el incumplimiento contractual de CR Desing y dos mil dólares ($2,000.00) de honorarios de abogado. La recurrente nos invita a considerar que, en el caso ante nos, existe una dualidad de controversias, a saber: que *de la prueba surgió que la querellante tiene una pareja, los cuales no están casados y no forman una sociedad legal de gananciales. Que esta pareja fue quien sufragó la mayor parte de los gastos, pero no es parte del pleito. Por tanto, al no ser parte del pleito, la querellante no tenía legitimación activa para reclamar los daños de un tercero[62]. Por lo que, la realidad es que, si se daba la concesión de daños a la querellante, se tenía que hacer proporcional a su aportación y no incluir la aportación de la pareja, la cual no forma parte del caso[63].* Por último, esboza que se debe modificar el cómputo concedido, porque el único informe que debe considerarse es el informe de inspección del DACo, el cual concede una cuantía de $9,389.25 y que, a este número, se debe restar $6,808.32 y, a su vez, aplicarle la participación de la recurrida, lo cual se le compensaría por la cantidad de $852. Adelantamos que no le asiste la razón, ya que, lo pertinente a determinar es si existe prueba que propenda a modificar la cuantía solicitada o reitere la resolución impugnada, en el marco de incumplimiento contractual.

Según los autos ante nuestra consideración, el DACo, luego de recibir la prueba y conceder credibilidad al perito de la recurrida,

---

[62] *Véase Petición de Revisión de decisión Administrativa.*
[63] *Íd.*

determina como hechos probados que la recurrente incumplió con su obligación, remodelación/decoración de la propiedad, lo que constituye un incumplimiento contractual, que a su vez ocasionó gastos a la recurrida. Dichos gastos fueron objeto de los informes de inspección realizados por el perito del DACo, así como por el perito de la parte recurrida sin que su cuantía, corrección y certeza fueran derrotadas por CR Desing.

Con estos antecedentes, es forzoso concluir que el incumplimiento contractual de CR Desing ocasionaron gastos a la recurrida, cuya suma fue establecida con prueba pericial, **no controvertida**. Por consiguiente, las cuantías incluidas en los informes de inspección e informe pericial que dieron base a las determinaciones de hechos del DACo en la *Resolución* que aquí se recurre, merecen nuestra deferencia por constituir la prueba pericial evaluada y adjudicada por la agencia. Cuando se trata de prueba pericial y documental, el tribunal revisor está en igual posición que el foro recurrido y, por lo tanto, está facultado para apreciar la prueba apoyándose en su propio criterio[64].

El tribunal revisor no deberá imponer su criterio por encima de aquel de la agencia si su conclusión fue razonable. En vista de que en el presente caso se probaron las alegaciones de la querella presentada por la recurrida y la Resolución recurrida está basada en evidencia sustancial, concluimos que no se cometieron los errores señalados por la parte recurrente de epígrafe. Tampoco dicha parte demostró que el DACo erró en su aplicación de la ley, por lo que, resolvemos conforme a la norma de deferencia que cobija a las decisiones administrativas.

Por lo antes expuesto, concluimos que no incidió el DACo al imponer una responsabilidad a CR Desing para el pago de la suma

---

[64] *Rebollo v. Yiyi Motors*, 161 DPR 69, 78 (2004).

de $16,269.02. Tampoco incidió el foro primario al imponerle el pago de $2,000 por concepto de honorarios de abogados.

**IV.**

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, ***confirmamos*** la *Resolución* recurrida a los fines de concederle a la señora Meléndez Rivera la cantidad de ($16,269.02) por el incumplimiento contractual de CR Desing y la cantidad de dos mil dólares ($2,000.00) en concepto de honorarios de abogado.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones